## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**     ) | |
|        ) | |
|     **Plaintiff,**     ) | |
|        ) | **CIVIL ACTION** |
| **v.**     ) | |
|        ) | **Case No. 08-2002-CM** |
| **SHIRLEY J. OYER,** *et al.,*     ) | |
|        ) | |
|     **Defendants.**     ) | |
| _____) | |

## MEMORANDUM AND ORDER

In this civil action, plaintiff United States of America seeks to reduce to judgment federal income tax assessments against defendant Shirley J. Oyer and foreclose tax liens upon defendant's property.  Defendant proceeds *pro se*.  Pending before the court is Plaintiff's Motion for Summary Judgment (Doc. 56).

## I.    FACTUAL BACKGROUND[1]

In abridged format, below are the relevant facts leading to this action.  Additional facts will be discussed as necessary throughout this Memorandum and Order.

Prior to their divorce in 1996, defendant and her husband, Dale Oyer, bought three parcels of real property in Johnson County, Kansas.  These parcels, which comprise the property that plaintiff seeks to foreclose on, are located at or adjacent to 24301 West 71st Street in Shawnee, Kansas. Defendant lived at the house on the property between 1980 and 1995.  The address on her driver's license remains 24301 West 71st Street, Shawnee, Kansas.

Prior to September 1, 1995, defendant was 50% shareholder and executive secretary of ABC

---

[1]  The court construes the facts in the light most favorable to defendant as the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has included only those facts which are relevant, material, and properly supported by the record.

Seamless Siding & Guttering, Inc.  Dale Oyer was the corporation's president.  On September 1, 1995, Dale and Shirley Oyer transferred their business and their real and personal property into five trusts: (1) ABC Seamless; (2) Mercier Properties; (3) Acme Leasing; (4) Global Finance; and (5) Shawnee Properties.  Dale and Shirley Oyer were the "creators" and the initial beneficiaries of all five trusts.  Their son Christopher Oyer was one of the two trustees on all five trusts.  Christopher was nineteen years old at the time of the creation of the trusts.  In return for transferring property into the trusts, Dale and Shirley Oyer received "Units of Beneficial Interest" in the trusts.

In 1996, defendant signed checks drawn on the Shawnee Properties Trust account payable to (1) American Bedrooms ($595.66); (2) Kansas City Power and Light ($54.31); (3) Diner's Club ($80); and (4) MasterCard ($100).  In 1998, defendant wrote checks on the Shawnee Properties Trust account for (1) "distributions" from the Shawnee Properties Trust to herself, including a $2,700 check; (2) mortgage payments ($2,237.72); (3) Kansas Power and Light ($287.84); and (4) a dentist, Dr. Bernard Williams, DDS ($142.50).

In 1997, Christopher Oyer and Martin L. Goodrich, as trustees of the Shawnee Properties Trust, transferred real property to defendant for "Units of Beneficial Interest."  The transfer was made at the request of a lender, The Mortgage Banc, Inc., because the lender would not lend to a trust.  Defendant then obtained a $190,000 loan from The Mortgage Banc, Inc, mortgaging two parcels of the 24301 West 71st Street property as security for the loan.  At that time, defendant signed a statement that she occupied the property on which the mortgage was placed.  Two days after receiving the transfer of property, defendant transferred the property back to the trustees of Shawnee Properties for Units of Beneficial Interest.  The loan was used in part to pay off Shirley and Dale Oyer's 1993 and 1994 federal income tax liabilities, as well as Shirley Oyer's credit card debts.

Revenue Agent Edward Tooey was assigned to investigate and determine Shirley and Dale Oyer's 1995 federal income tax liabilities, as well as those for 1997–1999.  As a result of Mr. Tooey's investigation, the Internal Revenue Service (IRS) made assessments against defendant for unpaid federal income taxes, penalties, and interest for 1995–1999.  The total assessments for all years, including $2,945.11 for unassessed interest in 1996, is $789,613.46.

Revenue Officer Joni D. Broadbent was then assigned to investigate and collect the unpaid tax liabilities of defendant for 1995–1999.  In 2006, notices of federal tax lien were filed with the Register of Deeds for Johnson County against the Shawnee Property Trust, Shawnee Properties Trust, and Shawnee Properties as the nominee of defendant.

## II.      STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.     DISCUSSION

### A.      Judgment for the Unpaid Balance of Tax Assessments

### 1.      *Was Plaintiff Required to Give Defendant Notice of the Assessments?*

No.  The court has already ruled that plaintiff gave defendant adequate notice.  In any event, tax assessments are not invalidated by failure to comply with 26 C.F.R. § 301.6203-1.  *Howell v. United States*, 164 F.3d 523, 525–26 (10th Cir. 1998).

### 2.      *Were the Assessments Timely?*

Yes.  Generally, taxes must be assessed within three years of when a return is filed.  26 U.S.C. § 6501(a).  But here, defendant did not file tax returns for the years at issue.  Where a taxpayer fails to file a tax return, "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."  26 U.S.C. § 6501(c)(3).  The three-year statute of limitations does not apply here.

### 3.       *Are the Assessments Valid and Correct?*

Yes.  A federal tax assessment is presumptively correct.  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242–43 (2002); *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992).  The assessment satisfies the government's burden of proof.  *Id.*  The taxpayer then must present evidence that the assessment is incorrect.  *Gonzales v. Millers Cas. Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir. 1991).  But where a taxpayer failed to report any income, the presumption of correctness does not arise unless a minimal evidentiary foundation supports the tax assessments.  *Erickson v. Comm'r*, 937 F.2d 1548, 1551 (10th Cir. 1991).  Once the government introduces "some substantive evidence" "demonstrating that the taxpayer received unreported income," the government has laid the factual foundation for the assessments.  *Edwards v. Comm'r*, 680 F.2d 1268, 1270 (9th Cir. 1982).  There must be "some predicate evidence connecting the taxpayer to the charged activity."  *Gerardo v. Comm'r*, 552 F.2d 549, 554 (3d Cir. 1977).

Plaintiff has presented certified IRS Account Transcripts and Certificates of Assessments and Payments.  Through the declarations of Revenue Agent Tooey, plaintiff explained how the IRS calculated various portions of the assessments.  Plaintiff also proffered the IRS deficiency notice, which explained how and why the taxes were calculated.  This evidence meets plaintiff's evidentiary burden to receive the presumption of correctness.

Defendant attempts to cast doubt on the assessments, but her efforts fall short of creating a

genuine issue of material fact as to whether the assessments are correct.  The "inconsistencies" that defendant identifies are not inconsistent.  The Schedule K-1s offered by defendant do not show that plaintiff's numbers are incorrect; instead, they confirm that defendant had unreported income from the Shawnee Properties Trust.  Defendant's other allegations are conclusory and unsupported by evidence other than her self-serving affidavit.  Also, in his second declaration attached to plaintiff's reply brief, Revenue Agent Tooey explains the differences between different types of incomes and the figures that defendant claims are inconsistent.  He also explains the origins of numbers that defendant claims are excessive.  The court has reviewed the papers submitted with the summary judgment briefing at length, and concludes that there is no genuine issue of material fact as to whether the assessments are correct.

The court notes that $2,945.11 for the 1996 tax year has not yet been assessed.  But the Tax Court determined that defendant owes this amount.  The decision of the Tax Court is *res judicata* in this action.  *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948).

The court has not mentioned all of defendant's arguments about the validity of the assessments—and whether the assessments exist at all—in detail.  The court has, however, considered each of them, and finds no merit in them.

**B.      Foreclosure**

A lien on defendant's property arose at the time the government made the assessments.  26 U.S.C. § 6321.  The lien extends to property in the hands of a nominee, or alter ego.  *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007).  Here, the property plaintiff seeks to foreclose is in the hands of the Shawnee Properties Trust.  The court therefore must determine whether the trust is the nominee of defendant.  To make this determination, the court applies a two-part test. First, the court determines whether defendant possesses property or rights to property under state

law to which the lien could attach. *Id.* at 1067. If so, then the court determines whether the nominee theory applies. *Id.* at 1068.

### 1.    *Does Defendant Have Property or Rights to Which the Lien Could Attach?*

Yes. Defendant and Dale Oyer retained an equitable interest in the real property when they transferred it to the Shawnee Properties Trust because "the donor of a fraudulent conveyance retains an equitable interest in the transferred property." *In re Krause*, 386 B.R. 785, 833 (Br. D. Kan. 2008). The badges of fraud were present in the transfer by virtue of the following facts:

- The grantors have a close familial relationship with one trustee of the trusts, Christopher Oyer.

- Because all of the Oyers' property was transferred into the trusts, they became insolvent.

- The trustees did not give the Oyers any consideration for the transfers, other than "Units of Beneficial Interest."

- The transfers were conducted in a manner contrary to normal business procedures.

Because defendant retained an equitable interest in the subject property, the court next turns to the second part of the inquiry.

### 2.    *Can Plaintiff Reach Defendant's Property Under the Nominee Theory?*

Yes. The court applies five factors to determine whether a trust is actually the nominee of a taxpayer:

> (1) the taxpayer's control over the nominee and its assets; (2) the use of trust funds to pay taxpayer's personal expenses; (3) the relationship between the taxpayer and the nominee; (4) the lack of internal controls and the lack of nominee oversight of taxpayer's actions; and (5) the lack of consideration for transfers of property.

*United States v. Dawes*, 344 F. Supp. 2d 715, 721 (D. Kan. 2004). "The ultimate inquiry is whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *Holman*, 505 F.3d at

1065 (citations omitted).  As applied here, all five factors weigh in favor of finding that the trust was the nominee of defendant.

First, the uncontroverted evidence shows that defendant exercised control over the trusts. Notably, the Oyers established five trusts.  *See Krause*, 386 B.R. at 837–38 (holding that the creation of multiple trusts acted as evidence of control over nominee and assets).  Defendant has signature authority over all of the checking accounts and wrote numerous checks.

Second, the evidence shows that defendant paid her personal bills from trust assets and wrote large checks to herself.  Most significantly, the trustees deeded property to her in August 1997 so that she could obtain a personal mortgage.  She used the funds to pay tax debts that encumbered the property and her credit card and other bills.

Third, there was and is a close relationship between defendant and the Shawnee Properties Trust.  Defendant is a grantor for all five trusts.  Her son, Christopher Oyer, serves as trustee for all five trusts.  He was nineteen years old at the time he became trustee.

Fourth, the evidence suggests that defendant's actions lacked oversight.  There is no evidence that Christopher Oyer ever prevented defendant from writing checks, obtaining the mortgage loan, or using the proceeds to pay her delinquent tax bills.

Finally, defendant did not receive any consideration for transferring her property into the trusts.  She received "Units of Beneficial Interest" in the trusts.

After considering these factors, the court determines that the undisputed facts show that the nominee theory should apply here.

**3.     *Has Plaintiff Shown as a Matter of Law that Dale Oyer has No Interest in the Property?***

No.  Plaintiff has addressed this issue in a cursory fashion.  While ultimately, plaintiff may prevail on this issue, plaintiff has not met its burden of showing that it is entitled to summary

judgment on the record presently before the court. Because plaintiff has not demonstrated that Dale Oyer has no interest in the property, the court will not enter an order of foreclosure at this time. This is the only issue remaining for resolution at the trial of this case. The parties should be prepared to address whether Dale Oyer retains an interest in the real property and, if so, how that interest affects foreclosure proceedings, if at all.

**IV.     Defendant Shawnee Properties Trust's Cross-Motion for Summary Judgment (Doc. 71)**

Defendant Christopher Oyer, as trustee of Shawnee Properties Trust, also filed a response to plaintiff's motion for summary judgment. In that response, defendant Christopher Oyer suggests that the court should grant summary judgment in his favor for two reasons: (1) the state court divorce property settlement conclusively establishes that neither Dale nor Shirley Oyer has any interest in the property; and (2) plaintiff has not made any tax assessments against Shawnee Properties Trust.

Neither of these arguments entitle defendant Christopher Oyer to summary judgment. The divorce property settlement is not consistent with defendant Shirley Oyer's actions. Her actions show that the trust was actually her alter ego. And plaintiff was not required to make tax assessments against the trust. Plaintiff is not seeking to foreclose the house as the property of the trust, but as the property of defendant. For these reasons, defendant Christopher Oyer, as trustee of the Shawnee Properties Trust, is not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 56) is granted in part and denied in part. The court will enter judgment in the amount of $789,613.46 in favor of plaintiff. But at this time, the court will not enter an order of foreclosure. The parties should be prepared to present evidence and argument on Dale Oyer's interest in the property at the trial on this issue.

**IT IS FURTHER ORDERED** that Defendant Shawnee Properties Trust's Cross-Motion for

Summary Judgment (Doc. 71) is denied.

Dated this 7th day of August 2009, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**